Good morning. May it please the court, my name is James Patterson, and I represent the petitioner, the appellant in this matter, Mr. Tatarinov. I'd like to reserve a minute or so for rebuttal, if I may, when I get to that. And I'd like to begin by addressing the 212H issue, the 8 USC 1182H equal protection argument. Mr. Tatarinov has been found to be not eligible for 212H relief because he had applied for lawful permanent resident status and been granted that status on a conditional basis prior to being placed in removal proceedings. 212H was modified by Congress with IRA-IRA to preclude certain lawful permanent residents from receiving this form of relief for requesting this waiver or pardon based upon whether or not they had been convicted of an aggravated felony, and this court has addressed that issue in Taniguchi, or if they had not resided lawfully in the United States for a period of seven years prior to the initiation of the removal proceedings. We believe that that issue has not been addressed by this court, that it is in fact And it's suggested in Taniguchi that if the goal of the Congress was to put additional responsibility as well as privileges on residents, that the expectation was in controlling crime, that you spend a certain amount of time without having committed penal violations. Why is that not sort of embraced in that umbrella? It's not embraced, Your Honor, because if they wanted to apply a time standard alone, they could have applied that across the board, and they did not. It only applies to lawful permanent residents. So in other words, somebody who resides here under a non-immigrant visa on, for example, a professional visa, an H-1B, could reside here for 60 days, commit a crime, be placed in removal proceedings, and be eligible for the relief. Time didn't seem to have any bearing on those types of individuals. And so you've got a situation where you have similarly situated individuals who are being treated differently. One example would be somebody. I think the question is, isn't the logic of Taniguchi applicable here? I mean, I think if we held otherwise, we would be in considerable tension with Taniguchi, don't you think? No, Your Honor. I believe Taniguchi mentions, and again, there were a series of cases that came out first in the, I believe the first one was the Lara Ruiz case in the Seventh Circuit, and then the Moore case, and then Taniguchi came out. And those cases all focused on aggravated felons and mentioned, starting with Lara Ruiz, the fact that Congress wanted to address those aliens who had committed serious criminal offenses. And they mentioned serious several times. Now you've got a situation where it is different. We're not talking about necessarily serious criminal offenses. You're talking about someone who commits any crime involving moral turpitude that renders them deportable, now being ineligible for this waiver. The logic of Taniguchi, again, finding a rational basis, doesn't necessarily apply here. Again, first of all, it focused on serious crimes. One of the rational bases that was put forward was Congress had an interest in expeditedly removing criminal aliens. That doesn't apply here, where you've got somebody who, if that's what they really want to do, they can do that by applying this across the board by saying, anybody who doesn't have the seven years here should be removed from the United States. This case, I believe, is- Didn't we, in Taniguchi, say, well, we can take it on a general principle? You take it on a step-by-step basis. This is one step. There may be more. Who knows? But you don't have to cover everything in one fell swoop. And it's still within the prerogative of Congress to determine that if you're going to get this status accompanying it comes the burden with the benefit, which is stay out of trouble for seven years before, or you won't be eligible for the waiver. Yeah, I see two separate issues there. The first being, was this a logical first step? It doesn't appear to be a logical first step to start removing the lawful permanent residents who have resided here, as opposed to those who don't have a legal status or who have a legal status, but it's not a permanent legal status. Again, similarly situated individuals. If you go back to this court's decision in Tapia, Acuna, where there was a violation of equal protection, the same rational basis could have been put forward there, that Congress was starting somewhere, and they decided to start with those aliens who were here in the United States, who were no longer going to be eligible to apply for 212, or who were not going to be eligible to apply for 212C relief, a waiver for criminal offenses. Whereas those aliens who had left the United States and were returning were going to be eligible for that relief. Again, that basis could be put forward, that Congress was beginning somewhere, they're going to start with this first step, and then they were going to move on. There also have been no further steps, I would note. And if what we're looking to do- Slow first step, huh? It's been a very slow first step. Who knows what they're going to do here in the next few weeks. But additionally, if you're looking at punishing those who have closer ties, because they somehow have a greater obligation, again, in this case, when you're talking about the seven years and not necessarily just the blanket barring everybody who's committed an aggravated felony, when you're dealing with the seven years, you have, again, individuals who could have similar ties to this country, who could be here as asylees, who could be here on an H-1B visa for a period of time, and have very similar ties, be married to lawful permanent residents, have work, employment, all of those things, a home here, who would be eligible for this relief, whereas somebody just by virtue of having that green card would not be eligible for the relief. We believe, again, that that is, there's not a rational basis to distinguish between those groups of people. Again, the cases that have looked at this before have looked at aggravated felons and have essentially compared them to illegal aliens, is what the cases say, that you've got an illegal alien and a lawful permanent resident, and comparing those two, and they found a rational basis. We don't believe there is a rational basis when you're just dealing with the seven years. Again, and some lawful permanent residents are going to be eligible for this relief if they've been here for the seven years. Others, under the seven years, won't be. Some aliens who are here legally will be eligible for this benefit. Actually, all of the aliens who are here legally, but do not have lawful permanent resident status would be eligible for this benefit, regardless of the amount of time that they've been here. Again, you could have a situation where somebody applies for a fiancee visa abroad. They intend to come here to marry a US citizen. They're granted that fiancee visa. They enter the United States, and in their first 30 days, they commit a crime that makes them deportable. Then they go ahead and get married to the US citizen's spouse, which they're required to do within the 90 days. That person could apply for lawful permanent resident status and be granted the 212H waiver, whereas if the US citizen had traveled abroad, married this individual in Mexico, and then gone through the normal processing of bringing them in on an immigrant visa, and then that person entered, and 30 days later, committed the exact same crime that the fiancee in the first example did, that person would not be eligible for the 212H relief. And again, you've got two people married to US citizens, same amount of time in the United States, one eligible for the waiver, one is not eligible for the waiver. We believe that that violates equal protection, and there's not a rational basis to distinguish between those groups of people. Again, unless there are questions, I'd reserve some time for rebuttal. Thank you, Counsel. Good morning, Your Honor. Sam Bett, we represent the Attorney General. Well, I would hope maybe to provide some insight here on this step, or the question of the first step. I mean, I think that it helps to see two things. First of all, every lawful permanent resident started off as a non-lawful permanent resident, so every alien has had this waiver available to him or her at some step, in the process of becoming a lawful permanent resident, and eventually a citizen. So you're saying, don't become a lawful permanent resident because you don't have these rights? Is that the upshot of your argument? Well, I think the upshot is that once you become a lawful permanent resident, it's not a good idea to commit crimes for at least seven years. No, but it really doesn't make too much sense. I mean, a person goes and gets a green card, and then goes through all the hoops, which are considerable, and the background investigation, and you have to, of course, at the time, you have to have a clean record. And then you go through all that, you're fingerprinted, you get the card, you say, now you have fewer rights, and you are ineligible for relief that 30 days ago you could have had. Doesn't make much sense, really, does it? Explain to me why it does. Well, okay, I think the panel Lieutenant Gucci explained that was that this person who jumped through all the hoops, who has a lot at stake now, has a lot more rights and privileges than he or she had before, employment, travel, conjoined military, there are some others I have listed that I can't think of right now, but all that at stake, and still commits crimes, and the Taniguchi panel said, this is a person who is more of a risk of being a recidivist. I read that, but I'm not sure it persuaded me of the sense of it. Well, I mean, of course, the problem with petitioners, we have Taniguchi, and I think its logic may apply here, but I still have difficulty understanding the rational basis for it. So you can help us out today. Sorry? So you can help us out today with that. Okay, well, I think another thing that helps me anyway is to keep in mind that this waiver is, this waiver concerns only criminal aliens. This waiver is only intended to help criminal aliens. Okay, and some of those criminal aliens are aggravated felons. So in other words, they're worse than all other criminal aliens. Aggravated felons, as we found in Taniguchi, never get the waiver. LPRs who are not aggravated felons, so they're not as bad, can get it, but they have to wait seven years. So there is a logical- I'm still having the same problem, that they go through all this. Isn't this the wrong message, in a way, that if you go through these steps, you achieve, go through all the hoops to achieve the status you now, while you're right, you may have increased traveling, et cetera, but you also lose all possibility of the waiver for seven years, whereas if you are a lesser status, or no status, illegally here, you may still have the option. It may not be exercised, but you still have the option. Isn't that exactly the wrong message, in addition to the concern about whether it's treating equal class differently? Well, again, lawful permanent residents started off when he or she applied, had that waiver available to him or her without any restrictions. So they had, as your Honor said, whether they needed it or not. So now, as an LPR, they're given a second bite, a second chance at having that waiver, if they commit crimes after they've become a lawful permanent resident. So it really just comes down to, basically, when was the crime committed? Was it committed before he became a lawful permanent resident? If so, then at that first step, it's available. Then after, given all these rights and privileges, access to our society, you still commit the crimes when you have all these things at stake, which, as Congress said, the rational basis could be, it may not have been an actuality, but it could have been, well, you're more of a risk, because you still commit crimes when you have all this at stake. You're more likely to be a recidivist. Well, this record, if we go strictly by the record, the record has some explanations for why he committed the crimes that he's charged with committing. And we have to see what type crime he's charged with committing. Now, I know your position is, we got a case, follow it. But if this had been the threshold, you might have had a different result. If the threshold had been- If this had been the first case, these facts. Oh, in other words, before the panel in Taniguchi? Yes. Well, I think that it still would have been the same. All you have to do is replace the word- What I was explaining is why Judge Thomas was asking you to give us some background for the rationale, and I think that, at least if I had asked the same question, the reason would have been because this fact pattern is very compelling in the opinion of a third of the panel, because we know, if we want to believe the record, why he committed the acts that he did, and we know what kind of crimes they were. They were, I mean, it was silly, and they shouldn't have done it, and they were illegal, but he doesn't appear to be a person who poses a particular threat for future crimes, does he? Well, it seems like someone who can't stop but committing these kinds of crimes. Maybe not, but he's had therapy now, and he's supposed to be all right. We don't know. I'm just, this record suggests that he is. Well, I guess I'm repeating myself, but- No, you don't have to carry that burden, I don't think. I was trying to help you give us some rationale for the reasons, if you've got it. Well, the aggravated felon can never get the waiver. This alien can get the waiver, could have gotten the waiver if he had waited seven years. You've gone through the hoops of the investigation, the background, and get the, you know, the imprimatur of the United States saying, you have met all of the requirements of good moral character, you're just fine, here's your card. Now, if you hadn't shown that, you'd be entitled to get this waiver now. I mean, it's a very odd result. Well, that's one way, I guess I say, that's one way of looking at it. But you know, the right to travel is, I mean, if you're waiting in line for a green card, people are usually afforded a right to travel. I mean, that's part of- Well, it's more restrictive. I mean, you have to get advanced parole. It's a much more difficult procedure. But you'd get a green card- It's not a, it's not a, I mean. Well, in fact- Go ahead. Yeah, let's assume he did have just a green card. We've got three shop lists. He explains that he had the money, he had the credit cards. It was a mental problem. He's dealt with it, he's had counseling. Granted, one of them he tried to resist, and so on, one of them was a 211. But let's assume we've just got the shop list. Don't you think, with that record, and his contrition, and his therapy, et cetera, if he had just had a green card, probably there would have been serious consideration of a waiver, don't you think? But now he can't have one, because he did jump through the hoops. Well, I mean, this was- This is pretty minor. I mean, he was convicted. I mean, apparently all these arguments didn't work in front of the criminal courts. No, no, he has to, we have to have the conviction to have this applied. Right. Of course, he hasn't been here lawfully. But the point I'm making is, but for the seven years, don't you think this is a pretty compelling case to apply the waiver, given the background, given his marriage, given the kids, given his work, given all of these other factors, given the minor nature of the offenses, that this would be a very good candidate, I would think, for the waiver, but he doesn't even have that option, because he did jump through the extra hoops. Well, I suppose that would be something for Congress to consider. I mean, but Congress didn't say, we're gonna give the waiver to people who only have petty theft convictions. I mean, it relates to all crimes that are covered by 212A2, and this happens to fall into that category. But Congress didn't make a special exception. So by your logic, if Congress decided that U.S.-born citizens convicted of crime should be removed, that would be a past rational basis scrutiny, because we have more privileges than green card holders, right? Well, of course, they can't do that. Well, but it's not the logic. The more rights you have, the more rights you lose. That's what you're, you have a hard stake, and therefore, the penalties are greater. That's what you're saying. I think that we apply this standard throughout life in the military, and an officer, the higher he or she rises, the more they're held up as a standard. They make a mistake, this person's going to be punished more. Right, but we know that's not true. We hold to a higher standard. Sorry, Your Honor. I take your point, and I'm sorry to interrupt, but we know that's not true of citizenship. And so that makes it seem more irrational to have this block of rights in the lawful permanent residence to which you've denied one right, but on either side, you would have probably some. I understand the argument entirely, but I don't see it irrational either to say that certain categories of people are going to be held to higher standards. I mean, that's done all the time. Yeah. You know what else you said? You said, you can't stop him. I thought, my recollection was, he hadn't committed a crime since 1998, but I looked to see, was my recollection accurate? It is. He hasn't committed a crime since 1998. So, when you say you can't stop him, he's had the therapy, and he's had the medication, and he hasn't committed a crime since 1998. So, how do you conclude that that's the record of a person who can't be stopped? Well, Your Honor, he hasn't been caught since 1998. I don't know what crimes he's been committed. He what? I'm sorry to hear you. He hasn't been caught since, oh, I'm sorry. We understand your position. Thank you very much. That's a good response. Just briefly, again, to distinguish between Taniguchi and the present facts, Taniguchi, again, addressed that aggravated felony bar, which there can be a rational basis for barring aggravated felons who are lawful permanent residents from getting certain relief. But again, where you've got, now in this fact pattern, where somebody's just, where they've committed a crime involving moral turpitude, and where, again, some of those lawful permanent residents, all lawful permanent residents who commit aggravated felonies are barred, but some lawful permanent residents who commit crimes involving moral turpitude are gonna be allowed to have this waiver. Other lawful permanent residents who commit a crime involving moral turpitude are not going to be allowed this waiver. And then you've got the whole range of individuals, again, being here on some type of a professional work or employment type visa that is not permanent resident status, they as well would be eligible for this waiver. I don't wanna kill your time, but it seems to me you gotta focus on one point. You must guess we've got a little feeling for the equities of your client's position, but we've got precedent that we are obligated to follow. And so you ought to tell us, how do you get around that precedent? If you think, if you know a way to do it. And if it were me, and this is presumptuous. Because it isn't. Right, because it is not. Thankfully, I would say, I don't envy your job, but Taniguchi, I think, is distinguishable. It deals with the aggravated felony part of that preclusion to 212H. Yes, but on what principle basis would you say that moral turpitude is different from aggravated felonies? I mean, if you follow the Taniguchi logic, it would not seem to allow for that distinction. So tell me why you think, just because there's a different category, the Taniguchi logic wouldn't apply. As I read through the cases again, Your Honor, again, those big three cases, Taniguchi, Laura Ruiz, and Moore, they all mention, and they all perhaps may be quoting each other, they all mention lawful permanent residents who commit serious crimes. They emphasize that serious crimes. And I think there's a distinction there that does make a difference. That aggravated felonies are serious crimes recognized by Congress, and there's a rational basis for precluding lawful permanent residents from relief who've committed serious crimes, but not who've committed any crime that may involve moral turpitude, such as two petty thefts. I'm out of time, Your Honor. Thank you. Thank you much for your arguments. I understand that you raised other arguments, and we'll consider those. So we appreciate the fact that you're taking a limited time on the subject that really requires additional discussion. So thank you both for your arguments. Case to serve will be submitted.
judges: Farris, Thomas, Schiavelli